IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MUZZAFFER S.M. TAHIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 6471 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| IMPORT ACQUISITION MOTORS, L.L.C., ) | |
| an Illinois Limited Liability Company, d/b/a ) | |
| BENTLEY GOLD COAST, LAMBORGHINI ) | |
| CHICAGO, INC., an Illinois Corporation, ) | |
| DOWNERS MOTORS, INC., an Illinois ) | |
| Corporation f/k/a LUXURY MOTORS INC., ) | |
| BENTLEY MOTORS INC., JOSEPH ABBAS, ) | |
| MARK HOPPE, and MARC IOZZO ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Muzaffer S.M. Tahir filed a three-count amended complaint against Import Acquisition Motors ("IAM"), Lamborghini Chicago, Inc. ("Lamborghini"), Downers Motors, Inc. ("Downers"), Bentley Motors, Inc. ("BMI"), Joseph Abbas, Mark Hoppe, and Marc Iozzo, arising from the alleged failure to deliver a car Tahir purchased from the Bentley Gold Coast car dealership ("BGC").[1] Count I for breach of contract is brought against IAM, Lamborghini, Downers, Abbas, Hoppe, and Iozzo. Count II for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Act"), 815 Ill. Comp. Stat. 505/2, is brought against all

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1332(a). In his Amended Complaint, Tahir has properly pleaded that all defendants are diverse to him. Tahir is an alien (a citizen of Canada). Hoppe and Iozzo are both Illinois citizens, and since they are the only members of IAM, which is a limited liability company, IAM is a citizen of Illinois and nowhere else. Downers and Lamborghini are both incorporated and have their principal place of business in Illinois, meaning it too is an Illinois citizen. Abbas is a citizen of Illinois. BMI is incorporated in Delaware, with its principal place of business in Massachusetts.

1

defendants. Count III for conversion is brought against IAM, Downers, Abbas, and Iozzo.[2]

Hoppe, Iozzo, and Lamborghini have filed motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). IAM seeks dismissal of Count I, and BMI seeks dismissal of Count II. For the following reasons, BMI's motion [#32] is granted, IAM's motion [#35] is denied, Lamborghini's motion [#39] is granted in part and denied in part, and Hoppe and Iozzo's motion [#42] is granted.

## BACKGROUND[3]

BGC is a Chicago car dealership at the center of this case. It was operated by Downers, of which Abbas was president. Four others—Lamborghini, IAM, Iozzo, and Hoppe—are alleged to have had managerial control over BGC. Iozzo is the manager of IAM and the president of Lamborghini, while Hoppe serves the latter as corporate secretary. BMI is the franchisor of the Bentley brand.

On August 4, 2009, Tahir entered into a contract with BGC for the purchase of a 2008 Bentley Spur. The parties agreed that Tahir would pay $135,000, and that the car would be delivered to his Calgary, Alberta home by August 17, 2009. Tahir made three payments, beginning with a $20,000 security deposit to Lamborghini. The balance of $115,197 was paid by two wire transfers to IAM's bank account. The car was never delivered. When Tahir contacted BGC, he spoke with Abbas, who denied Tahir's demands for a refund and told him that Hoppe and Iozzo had custody of the money. The $20,000 deposit was credited back to Tahir

---

[2] Count III was also initially brought against Hoppe and Lamborghini. As discussed below, the money that Hoppe and Lamborghini are alleged to have converted was returned. In the Amended Complaint, Tahir has dropped Count III against them. As Hoppe and Lamborghini initially sought dismissal of this count, their motions with respect to this count are now moot and will not be addressed.

[3] For the purpose of resolving the pending motions, the facts alleged in the Amended Complaint are presumed to be true.

2

in October 2009, after the initial filing of the complaint, though the money transferred via wire transmissions is still outstanding.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). The court must accept as true all well-pleaded facts in the plaintiff's complaint, with all reasonable inferences drawn in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). Simply providing a defendant with notice of the claims against her is no longer enough; a complaint fails under Rule 12(b)(6) unless it establishes that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Additionally, failure to plead a necessary element for relief calls for dismissal. *R.J.R. Servs., Inc.* v. *Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989). Allegations of fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## DISCUSSION

### I. Breach of Contract (Count I)

#### A. Iozzo and Hoppe

Tahir alleges that Iozzo was the manager of IAM. IAM is a limited liability company ("LLC"), and under the Limited Liability Company Act, "a member or manager [of an LLC] is not personally liable for a debt, obligation, or liability of the company solely by reason of being

or acting as a member or manager." 805 Ill. Comp. Stat. 180/10-10(a). This is true where the debts, obligations, and liabilities arise out of either tort or contract. *Id*. Insofar as Iozzo is being sued solely on the basis of his position as IAM's manager, that portion of Count I against Iozzo must be dismissed, as there is no secondary liability for a manager of an LLC under the Limited Liability Company Act.[4]

Additionally, neither Iozzo nor Hoppe could have been parties to the contract as a result of their alleged positions as corporate officers of Lamborghini. Privity is an essential element of a suit for breach of contract, *see Kaplan* v. *Shure Bros., Inc.*, 153 F.3d 413, 417 (7th Cir. 1998): Tahir's failure to allege facts from which privity could be plausibly inferred requires that this portion of his complaint be dismissed. Reading his pleadings as charitably as possible, his claim amounts to the assertion that, because Iozzo and Hoppe were allowed to enter into contracts on behalf of BGC, they are parties to the contract. This overlooks the fact that "[o]ne of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf." *Nat'l Acceptance Co. of Am.* v. *Pintura Corp.*, 418 N.E.2d 1114, 1116–17, 94 Ill. App. 3d 703, 50 Ill. Dec. 120 (1981). Though a corporation can be held responsible for the acts of its officers, the reverse is not generally true. *See Mark I, Inc.* v. *Gruber*, 38 F.3d 369, 371 (7th Cir 1994); *G2 Enters., LLC* v. *Nee*, No. 05 C 5803, 2006 WL 1647518, at *3 (N.D. Ill. June 7, 2006) (holding that a corporate officer was not bound by a contract signed by him in his official capacity, because the contract referenced only the companies and not the officers). The pleadings allege no facts that would form an exception to that rule. *See, e.g.*, Business Corporation Act of 1983, 805 Ill. Comp. Stat. 5/3.20 (stating that

---

[4] There are exceptions to this, but none is alleged in the pleadings. *See* 805 Ill. Comp. Stat. 180/10–10(d).

4

corporate officers may be liable if they "exercise corporate powers without the authority to do so").

Of course, corporate officers and managers of LLCs are still liable for *their own* acts, but nothing in the pleadings alleges that Iozzo or Hoppe were even aware of, let alone agreed to (on behalf of themselves or anyone else), the sale of the Bentley Spur. Nor is there any basis for inferring that their alleged managerial control over Bentley Gold Coast was the result of anything other than their positions at IAM and Lamborghini. On the facts alleged, there is no basis for inferring that they were parties to this contract, and so the allegations would fail to establish a necessary element of an action for breach of contract even if proven true. Thus, Count I against Iozzo and Hoppe must be dismissed.[5]

### B.     Lamborghini and IAM

Lamborghini and IAM are also alleged to have managed the dealership with which Tahir contracted and to have received payments as part of the sale in question. As companies rather than individuals, however, they are unable to take advantage of the arguments in the previous section to shield themselves from liability and so must be considered separately. Both argue that, since they were not legally permitted to sell the car, they could not have been parties to the contract. There are two problems with this assertion. First, whether or not an entity can legally enter into a contract is a separate question from whether it did. Second, allegations that Lamborghini and IAM had the ability to sell the car can be inferred from the complaint, and

---

[5] In his response brief, Tahir relies on facts disclosed only in a third-party cross-claim and not alleged in his pleadings. Since these allegations are not part of Tahir's pleadings, this court will not consider them for the purposes of deciding the motions to dismiss. *Hill* v. *Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976) ("[C]ourts are restricted to an analysis of the complaint when evaluating a motion to dismiss.").

5

whether they *actually* did or not is a question of fact to be addressed at a later time.[6] *See Lovellette* v *S. Ry. Co.*, 898 F.2d 1286, 1291 (7th Cir. 1990) (finding that a 12(b)(6) motion to dismiss could not be granted because it presented issues of fact).

In a joint brief, Lamborghini and IAM argue that they are not parties to the contract because they are not named parties but instead mere agents and so not capable of being held liable for contracts entered into on behalf of the principal (in other words, whomever they served as agents in managing BGC).[7] It is true they are not named parties to the contract, but Tahir alleges that they managed the dealership, and so the plausibility of his claim—and the fate of the motion to dismiss—turns on whether they might be parties to the contract as agents.

In defense of the proposition that as agents they cannot be parties to the contract, Lamborghini and IAM cite a single admiralty case—*Valkenburg* v. *S.S. Henry Denny*, 295 F.2d 330 (7th Cir. 1991)—and misrepresent the relevant holding. While *Valkenburg* holds that generally it is the principal and not the agent who is bound by the contract, the agent is bound where she "executes a contract for an undisclosed principal." *Id.* at 333. Cases arising under Illinois law, which applies to this case, have reached the same conclusion. *See Kimco Corp.* v. *Murdoch, Coll & Lillibridge, Inc.*, 730 N.E.2d 1143, 1146, 313 Ill. App. 3d 768, 246 Ill. Dec. 678 (2000) ("It is a well-established general rule that an agent who contracts with a third party on behalf of [an] undisclosed or partially disclosed principal is personally liable on the contract."); *Jameson Realty Group* v. *Kostner*, 813 N.E.2d 1124, 1136, 351 Ill. App. 3d 416, 286 Ill. Dec. 431 (2004).

On the facts alleged, Tahir has a plausible claim for relief. Both Lamborghini and IAM are

---

[6] The court declines to consider information contained in IAM's crossclaim in support of Tahir's allegations against IAM and Lamborghini, as Tahir invites the court to do.

[7] Presumably this is Downers, but the answer is irrelevant to the court's holding.

6

alleged to have managed the dealership and received payments for the car. The receipt of the payments allows the inference that they were involved in the contract's negotiation—in other words, that they were responsible for the actions of the employees who negotiated the contract[8]—and thus acted as agents of the principal. Since the inference is reasonable, it must be drawn, *Dixon*, 291 F.3d at 486, leaving for a later day the question of whether Lamborghini and IAM sufficiently disclosed the identity of the principal to avoid liability. *See Lovellette*, 898 F.2d at 1291. Therefore, the motion to dismiss Count I against Lamborghini and IAM must be denied.

## II.   The Act (Count II)

To state a claim under the Act, a plaintiff must establish: "(1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade or commerce." *Zekman* v. *Direct Am. Marketers*, 695 N.E.2d 853, 860, 182 Ill. 2d 359, 231 Ill. Dec. 80 (1998). The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to a claim under the Act. *U.S.* v. *All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007).

---

[8] It can be reasonably inferred from the complaint that the employees who negotiated the contract were acting as agents for IAM and Lamborghini, at least in part, since they would have worked under their control and negotiated a contract which involved the transfer of money to IAM and Lamborghini. It can therefore be reasonably inferred that IAM and Lamborghini would be agents who negotiated that contract, by way of the actions of those employees who negotiated the contract. In essence, they could be liable as agents through the actions of *their* agents. *See Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 592, 174 Ill. App. 2d. 482, 221 Ill. Dec. 389 (1996) (stating that a showing of agency requires facts showing that the alleged agent had actual or apparent authority to act on behalf of the principal). Whether or not the employees that negotiated the contract actually were agents of IAM and Lamborghini is a question of fact, *Progress Printing Corp.* v. *Jane Byrne Political Comm.*, 601 N.E.2d. 1055, 1065, 235 Ill. App. 3d. 292, 176 Ill. Dec. 357 (1992), to be decided later. *See Lovellette*, 898 F.2d at 1291.

### A. Lamborghini, Iozzo, and Hoppe

Lamborghini, Iozzo, and Hoppe contend that Tahir has failed to allege "with particularity, the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The court agrees, because the acts that Tahir alleges are not fraudulent under the Act as a matter of law, and so he has failed to state *any* circumstances constituting fraud. In Illinois, "[a] breach of contractual promise, without more, is not actionable under the [Act]." *Avery* v. *State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill. 2d 100, 296 Ill. Dec. 448 (2005) (citing *Am. Airlines, Inc.* v. *Wolens*, 513 U.S. 219, 233, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995)). In other words, no action exists under the Act where the allegation is simply that the "defendant promised something and then failed to do it. That type of misrepresentation occurs every time a defendant breaches a contract." *Id.* (quoting *Zankle* v. *Queen Anne Landscaping*, 724 N.E.2d 988, 993, 311 Ill. App. 3d 308, 244 Ill. Dec. 100 (2000)) (internal quotation marks omitted).

The facts Tahir alleges support, at most, a "naked breach-of-contract claim."[9] *Zankle*, 724 N.E.2d at 993 (holding that a plaintiff who relied upon representations made by the defendants while negotiating the contract could not sue for the misleading nature of those representations under the Act). He alleges only that a promise was made as part of the sale, and that this promise was not adhered to. Importantly, the alleged promise was not deceptive regarding the nature of the car itself—the alleged deception consisted of a promisor's lack of intention to live up to the agreed upon terms. *Compare Gehrett* v. *Chrysler Corp.*, 882 N.E.2d 1102, 1115–16, 379 Ill. App. 3d 162, 317 Ill. Dec. 946 (2008) (allowing a plaintiff who was induced to enter a contract by faulty representations of an automobile's features to file a claim

---

[9] This is not to say that there actually was a contract between these parties. On the basis of the facts in the pleadings, however, the only cognizable cause of action is breach of contract.

under the Act since the allegations went beyond a breach of contract), *with Langendorf* v. *Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1023–24 (N.D. Ill. 2008) (distinguishing between *Gehrett* and a case where the defendant allegedly failed to behave as promised). As a matter of law, mere failure to live up to a contractual promise is not a violation of the Act. Thus, Tahir has not stated a claim for violation of the Act, and Count II against Lamborghini, Hoppe, and Iozzo must be dismissed.

### B. BMI

In the previous section, the court determined that Count II against Lamborghini, Hoppe, and Iozzo had to be dismissed because it alleged only a breach of contract, which as a matter of law is not actionable under the Act. Tahir's claim against BMI does not allege that BMI breached a contract but rather that it assisted others in doing so. Since Count II against BMI can be dismissed without considering whether actions against parties that *assist others* in breaching contracts are barred under the Act, Count II against BMI is considered separately. Section 2 of the Act does not extend liability to those who "knowingly receive the benefits of another's fraud." *Zekman*, 695 N.E.2d at 859; *see also Jackson* v. *S. Holland Dodge*, 755 N.E.2d 462, 471, 197 Ill. 2d 39, 258 Ill. Dec. 79 (2001). BMI is accused only of having "aided and abetted the deception [of the other defendants] by allowing its franchisee to use the 'Bentley' name in the course of the scheme to deprive Tahir of his property," Am. Compl. ¶ 27, and as an "inducement to convince Tahir to enter into the Sale Contract." *Id.* ¶ 14. There is nothing in the complaint showing that BMI was itself an active participant, instigator, or supporter of the scheme, and so BMI could not have been more than a beneficiary of others' fraudulent activities on the facts alleged. Thus, as BMI argues, it cannot be liable under the Act. *See Zekman*, 695

9

N.E.2d at 859. In his response, Tahir strains to argue that he has properly alleged wrongdoing on the part of BMI, describing them as active participants in the fraud and going so far as to charge them with approving the actions of the other actors. These averments were not in his pleading and are thus irrelevant to the issue before this court.[10] As it stands, his complaint fails to allege what BMI did to participate in the fraudulent scheme (beyond simply allowing the use of its name), how it was done, or when it happened. It thus fails to satisfy the heightened pleading requirements of Rule 9(b). *See DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In fact, as BMI notes, Tahir fails to establish a right to relief even under the more relaxed criteria of Rule 8. The facts here, assumed true, are equally indicative of both legal and illegal behavior (franchisors, by their very nature, allow franchisees to use their names). On the basis of the facts alone, it is therefore impossible for the court to reasonably infer that BMI committed the wrong in question. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 US at 556–57 (holding that the pleadings failed to meet the requirements of Rule 8(a), because the facts pleaded did not make it more likely that the behavior alleged was illegal rather than legal). Thus, this claim is not plausible on its face and must be dismissed.[11]

## III. Conversion against Iozzo (Count III)

A successful claim of conversion requires that the plaintiff allege "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3)

---

[10] While normally a plaintiff may supplement his complaint with facts contained in a response to a motion to dismiss as long as they are consistent with the complaint, "such supplementation cannot save the charge if the charge is one of fraud, because a charge of fraud must be *pleaded* with particularity." *Kennedy* v. *Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir 2003).

[11] Because this issue is dispositive, the court need not address BMI's argument that, as a franchisor, it cannot be liable for the conduct of its franchisee.

a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co.* v. *Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione* v. *Johnson*, 703 N.E.2d 67, 70, 184 Ill. 2d 109, 234 Ill. Dec. 455 (1998)). There are two potential claims for conversion: one for the money Tahir allegedly paid to the defendants, and one for the car itself. These are addressed in order.

### A. Conversion of the Payments Made By Tahir

"[T]he general rule is that conversion will not lie for money represented by a general debt or obligation. It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus*, 483 N.E.2d 1258, 1261, 108 Ill. 2d 255, 91 Ill. Dec. 623 (1985). Iozzo alleges that because Tahir did not *at all times* have a right to the money, he has no claim for conversion.

Tahir's case is much like *Horbach* v. *Kaczmarek*, 288 F.3d 969 (7th Cir. 2002). There, the plaintiff made upfront payments for a "tire pyrolysis system." *Id.* at 971. The system was not provided in accordance with the contract, and the plaintiff sued for conversion of the money paid to the defendant. The district court held, and the Seventh Circuit affirmed, that the plaintiff had no claim for conversion in Illinois because he was unable to show that "the money at all times belonged unconditionally to him. His agreement with the defendants obligated him to pay them that money; and the defendants' receipt of that money thus cannot be described as unauthorized or wrongful in the sense that a claim for conversion requires." *Id.* at 978.

Tahir's attempt to distinguish this case is unavailing. He argues, citing no cases, that because the defendants never intended to deliver the vehicle, he never lost his absolute right to

the money. This distinction is irrelevant, since nothing in *Horbach* depends on the parties' intentions. In both cases, plaintiffs made upfront payments, only to be frustrated by their contracting partners' failures to perform. Like the plaintiff in *Horbach*, Tahir has no claim for conversion.

Tahir's voluntary transfer of the money bolsters the conclusion that defendants "may be liable in debt, but not in conversion." *Gen. Motors Corp.* v. *Douglass*, 565 N.E.2d 93, 100, 206 Ill. App. 3d 881, 151 Ill. Dec. 822 (1990). Courts have consistently held that there is no conversion where one has *voluntarily* transferred money to another. *See Cordes & Co.* v. *Mitchell Cos.*, 605 F. Supp. 2d 1015, 1024 (N.D. Ill. 2009) ("Defendants cannot have 'converted property which was voluntarily given to [them] in the first instance.'" (citing *Douglass*, 565 N.E.2d at 100) (alteration in original)); *c.f. Roderick Dev. Inv. Co.* v. *Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1135–36, 282 Ill. App. 3d 1052, 218 Ill. Dec. 297 (1996) (holding that a claim of conversion was appropriate where there was no voluntary transfer of funds from the plaintiff to the defendant). As Iozzo argues, there was no conversion as a matter of law because, even on the most charitable reading of Tahir's complaint, the funds were voluntarily transferred. *See Cordes & Co.*, 605 F. Supp. 2d at 1024. Thus, this portion of Count III must be dismissed.

### B. Conversion of the Vehicle

Iozzo argues that because the pleadings do not allege that he exhibited "control, dominion or ownership over the property," *Van Diest*, 425 F.3d at 439 (citing *Cirrincione* 703 N.E.2d at 70), this count must be dismissed. Indeed, the only thing Iozzo is alleged to have been in control or possession of at any time is the money wired to IAM. Because this is a necessary element of a

claim for conversion, Tahir has failed to state a claim upon which relief can be granted, at least against Iozzo as an individual with respect to the car itself.

Tahir's pleadings, however, might be read to allege that Iozzo is liable for conversion in his capacity as either president of Lamborghini or manager of IAM,[12] meaning that he exhibited control of and converted the property vicariously. As president, Iozzo was a corporate officer of Lamborghini. In order to pin personal liability on Iozzo for any tort committed by Lamborghini, Tahir would need to allege that Iozzo "participated in the conduct giving rise to that liability." *Itofca, Inc.* v. *Hellhake*, 8 F.3d 1202, 1204 (7th Cir. 1993) (quoting *Prince* v. *Zazove*, 959 F.2d 1395, 1401 (7th Cir. 1992)) (internal quotation marks omitted); *see also Nat'l Acceptance*, 418 N.E.2d at 1117 ("[A] corporate officer's individual liability for conversion committed by him personally in behalf of the corporation is established in the same manner as his liability for any other tort; by proof of active participation in the conversion."). It is not enough that Iozzo merely held the position of president.

The only relevant factual allegation regarding the conversion of the vehicle is that the defendants generally have "refused to answer [Tahir's] requests for possession of the Vehicle." Am. Compl. ¶ 13. Even assuming that Iozzo was one of the defendants informed about the ongoing conversion, the pleadings do not allege that he *participated* in the conversion[13] but, at most, that he failed to stop it, and for that alone he cannot be liable. *See IOS Capital, Inc.* v.

---

[12] As noted in section I.A of the discussion, there is no plausible basis for inferring that Iozzo managed BGC in any other capacity.

[13] At least one recent decision holds that Tahir must go even farther than this and show that Iozzo was a participant "in the wrongful act *initially giving rise* to the corporation's liability." *IOS*, 808 N.E.2d at 611 (holding that a corporate officer who knew his company was engaging in tortious acts did not become a participant in those acts until *after* the goods were already being converted, and so could not be held personally liable). In other words, Tahir would need to allege that Iozzo was involved in the *initiation* of the act of conversion.

13

*Phoenix Printing, Inc.*, 808 N.E.2d 606, 611, 348 Ill. App. 3d 366, 283 Ill. Dec. 640 (2004) (holding that a corporate officer's participation in an alleged conversion did not begin until he ordered the employees to continue the corporation's tortious behavior, since "knowledge of the corporation's tort is not enough to hold a corporate officer liable thereunder"); *Browning-Ferris Indus. of Ill.* v. *Ter Maat*, 195 F.3d 953, 956 (7th Cir. 1999) ("[T]here is no doctrine of 'superiors' liability,' comparable to the doctrine of *respondeat superior* . . . ."). Thus, there is nothing from his position at Lamborghini that would allow the court to infer that Tahir has a right to relief from Iozzo.

Iozzo's position as manager of IAM—an LLC—does not appear to be a corporate office, but Tahir's position is no better for it, because as discussed above, "a member or manager [of an LLC] is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 Ill. Comp. Stat. 180/10-10(a)–(d); *see also Aqua Thick, Inc.* v. *Wild Flavors, Inc.*, No. 08 C 6278, 2009 WL 4544696, at *2 (N.D. Ill. Dec. 1, 2009) (distinguishing between the liability of a corporate official and a LLC manager), *Puleo* v. *Topel*, 856 N.E.2d 1152, 1158, 368 Ill. App. 3d. 63, 306 Ill. Dec. 57 (2006). Though there are exceptions in subsection (d),[14] neither of them is even hinted at in the pleadings.

As Iozzo contends, Tahir's pleadings fail to allege that he ever had possession of the vehicle, either independently or via vicarious liability. There is thus no plausible reading of Tahir's pleadings in which he has stated a claim upon which relief can be granted with regard to Iozzo's alleged conversion of the vehicle, and Count III against Iozzo will be dismissed.

---

[14] "All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations, or liabilities of the company if: (1) a provision to that effect is contained in the articles of organization; and (2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision." 805 Ill. Comp. Stat. 180/10-10(d).

## CONCLUSION AND ORDER

For the foregoing reasons, BMI's motion [#32] is granted, IAM's motion [#35] is denied, Lamborghini's motion [#39] is granted in part and denied in part, and Iozzo and Hoppe's motion [#42] is granted. Count I is dismissed as to Iozzo and Hoppe without prejudice with leave to replead. Count II is dismissed as to Iozzo, Hoppe, Lamborghini, and BMI without prejudice with leave to replead. Count III is dismissed as to Iozzo without prejudice with leave to replead. Tahir has until July 29, 2010 to file an amended complaint.

Dated: July 15, 2010              Enter: _____

                                                                                        JOAN HUMPHREY LEFKOW
                                                                                        United States District Judge